**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**CORNELL O. SMITH,**

**Plaintiff,**

**v.** **Case No. 24-CV-1656**

**RANDALL BRUCE,**

**Defendant.**

---

## DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Cornell O. Smith, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Smith sues defendant Randall Bruce for allegedly conducting an unreasonable strip search of his person with the intent to humiliate him in violation of the Fourth and Eighth Amendments. Bruce filed a motion for summary judgment, which is fully briefed and ready for a decision. (Docket # 41.) For the reasons stated below, the court grants in part and denies in part Bruce's motion for summary judgment.

## FACTS

At all relevant times, Smith was housed at Racine Correctional Institution ("RCI"). (Docket # 43, ¶ 1.) Bruce was a Correctional Sergeant at RCI. (*Id.*, ¶ 2.) On March 27, 2022, while Bruce was working the second shift in the Kenosha Housing Unit, at approximately 9:15 p.m., he and two other officers, Fleener and Royster, were "watching live security feed via the dayroom surveillance." (*Id.*, ¶¶ 10–11.) Bruce states he "observed Smith receiving suspected contraband from another inmate under the table in the back dining area." (*Id.*, ¶

11.) He then "observed Smith immediately hid[e] the suspected contraband in his right sock then beg[i]n walking away." (*Id.*, ¶ 13.) Fleener intercepted Smith walking towards the laundry area and told him to go to the officer's station. (*Id.*, ¶ 14.)

Upon arriving at the officer's station, Bruce asked Smith what the bulge was in his right sock, and Smith responded that it was nothing. (*Id.*, ¶ 15.) According to Bruce, "Smith was wearing three layers of pants, shorts, and boxers as well as multiple layers of socks at the time[,]" which, in Bruce's professional experience, suggested Smith was trafficking contraband. (*Id.*, ¶ 16.)

Smith denies ever receiving contraband from another prisoner in the back of the dining area. (Docket # 58, ¶ 3.) He also states that he was "wearing one pair of socks, shower sandals, one pair of personal grey shorts, one personal grey t-shirt and one state issued green over shirt and nothing else." (*Id.*, ¶ 2.) Smith states that Fleener told him to go to the officer's station, and as he approached, "Sgt. Bruce and Officer Courtney Royster were both smirking and grinning at Smith." (*Id.*, ¶ 5.) Smith does not dispute that Bruce asked him about a bulge in his right sock and that he responded it was nothing. (*Id.*, ¶ 6.)

Because Smith refused to inform Bruce what the bulge was, he conducted a pat down search of Smith's person outside the officer's station. (Docket # 43, ¶¶ 17–18.) At that time, the only items Bruce asked Smith to remove were his socks and shoes. (*Id.*, ¶ 17.) Bruce states that while he was conducting the pat down search, he "used an open hand 'blade' swipe along the waistline of Smith's pants to see if there was anything secured there. Sergeant Bruce then hooked his thumbs into the waistline of Smith's pants and shook them in an attempt to get any contraband to fall out of the bottom of the pants." (*Id.*, ¶ 18.)

Smith characterizes the search as Bruce "thoroughly pat searched Smith all over Smith's body, i.e. rubbing his hands everywhere, legs, buttocks, genitals, stomach, chest, back and neck of Smith." (Docket # 58, ¶ 7.) Smith acknowledges that Bruce ordered him to remove his socks and shoes first, and then after the pat search "ordered Smith to remove his clothes down to his underwear all in the presence of officers Fleener and Royster (female) and an entire day room full of inmate observers." (*Id.*, ¶ 8.) Smith asserts that Bruce then ordered him to remove his underwear but he refused. (*Id.*, ¶ 9.) Smith told Bruce that the shower area was nearby, suggesting that the shower area would be the more appropriate venue for a fully nude strip search. (*Id.*) Bruce then asked Smith if he was disobeying an order. (*Id.*) At this point, Smith said that "some inmates were making demeaning and sexual comments: 'he's thick' 'he built like a bitch'". (*Id.*, ¶ 11.) When Smith objected, Bruce responded, "I do what I want." (*Id.*, ¶ 12.) Because Smith was refusing to remove his underwear, Bruce ordered Smith to go to the shower area to perform a second strip search. (*Id.*, ¶¶ 13–14.)

Bruce states that when the pat search did not turn up any contraband, he called a supervisor "requesting permission to perform a for-cause strip search[,]" which was approved. (Docket #43, ¶ 19.) Bruce disputes that he made Smith strip in front of the officer's station, instead stating that he took Smith to the Kenosha East housing unit's shower area, which was away from the Kenosha West housing unit's day room. (*Id.*, ¶ 20.) Bruce notes that the Kenosha East dayroom was closed at the time. (*Id.*, ¶ 21.) Bruce states that Fleener performed the strip search in a shower stall while Bruce observed. (*Id.*, ¶ 22.) According to Bruce, because it was performed in a shower stall, only "Smith's shoulders and up, as well as his knees and down would have been visible to anyone walking by the

shower area." (*Id.*, ¶ 23.) Bruce states no contraband was found during the strip search. (*Id.*, ¶ 24.) Bruce disputes that a second strip search took place. (*Id.*)

Smith states that during the second strip search, which took place in front of Royster, who is female, "[he] was subjected to removing all his clothing again, in addition to running his fingers through his hair, mouth, raise his tongue, arms, private parts and cough, turn around show the bottom of his feet, bend over from the waist down and use his hands to spread his butt cheeks so his rectum could be examined." (Docket # 58, ¶¶16–17.) Smith states he heard Royster say, "This may be unnecessary." (*Id.*, ¶ 17.)

Bruce states that there was no Prison Rape Elimination Act ("PREA") investigation as a result of the strip search, though there was a follow-up review of the March 27, 2022, incident. (Docket # 43, ¶¶ 31–32.) Smith states that on March 28, 2022, he and "other witnesses to the March 27, 2022 incident" visited the unit manager's office and reported what happened. (Docket # 58, ¶ 19.) The unit manager also had Smith moved to another housing unit. (*Id.*, ¶ 20.) Also on March 28, Lieutenant Launderville interviewed Smith, telling Smith that he was assigned to the PREA investigation. (*Id.*, ¶ 21.) Smith described to Launderville what occurred, including the nature of the searches. (*Id.*, ¶¶ 23–24.) On March 30, 2022, Smith wrote the Warden asking, "Can you please inform me as to what the PREA supervisor, that you called, stated about the illegal search done in the dayroom on March 27, 2022 between 8pm and 8:10pm on Kenosha unit?" (*Id.*, ¶ 25.) The Warden responded with only "Lt. Launderville." (*Id.*)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Smith claims that Bruce violated his Fourth and Eighth Amendment rights when he performed the pat down search and strip search on March 27, 2022. I will address each claim in turn.

### *1. Fourth Amendment Claim*

"[T]he Fourth Amendment protects (in a severely limited way) an inmate's right to bodily privacy during visual inspections, subject to reasonable intrusions that the realities of incarceration often demand." *Henry v. Hulett*, 969 F.3d 769, 779 (7th Cir. 2020). "Thus, when evaluating a prisoner's Fourth Amendment claim regarding a strip or body cavity search, courts must assess that search for its reasonableness, considering 'the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). The Seventh Circuit has held that pat down and strip searches "do not violate the Fourth Amendment where the level of intrusion does not outweigh the purported justification for the search." *Henry*, 969 F.3d at 784. When considering the justification for the search, "courts must afford prison administrators 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell*, 441 U.S. at 547). Unless a plaintiff provides "substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Id.*

Taking the facts in a light most favorable to Smith, there are three searches at issue: 1) the initial pat down search; 2) the strip search down to Smith's underwear at the officer's

station; and 3) the full strip search that took place in the shower away from the prison population but in front of a female officer. As to the pat down search, Smith describes the pat down search as Bruce "rubbing his hands everywhere." (Docket # 58, ¶ 7.)[1] However, that is essentially what a pat down search requires. Smith offers no evidence that indicates Bruce had other motives other than attempting to find the suspected contraband. As such, the pat down search was reasonable.

Regarding the search at the officer's station, whether the search was reasonable turns on whether forcing Smith to strip down to his underwear is invasive enough to qualify as a constitutional violation. Given the recency of the Seventh Circuit's holding in *Henry v. Hulett*, the case law addressing the question of whether a search of a convicted prisoner that does not expose private parts qualifies as an unconstitutional invasive strip search is scant. However, the Seventh Circuit's precedent regarding searches that require arrestees or detainees to remove articles of clothing in public during detainment is instructive. In *Stanley v. Henson*, 337 F.3d 961 (7th Cir. 2003), the Seventh Circuit determined that a search of a female detainee for contraband upon booking where she did not have to remove her bra or underwear; was not touched by any officer while disrobed; and was conducted in a semi-private area was not intrusive enough to outweigh the legitimate purpose of searching for contraband. In *Campbell v. Miller*, 499 F. 3d 711 (7th Cir. 2007), the Seventh Circuit held that any exposure of an arrestee's body cavities in a public place is too invasive regardless of whatever justification the arresting officer possessed.

[1] Bruce, in his reply brief, argues that these facts are actually new allegations and the court should disregard them because Smith did not amend his complaint. (Docket # 61 at 1–2.) The court does not consider these facts new and separate allegations. Instead, the court construes them as details. Complaints do not require plaintiffs to plead every fact supporting his claim, and it makes sense that at the summary judgment stage, Smith is able to provide more detail. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Courts in this district have also found that the key is whether the search exposed the detainee's genitals or buttocks. In *Ragland v. City of Milwaukee*, 104 F.Supp.3d 958 (E.D. Wis. 2015), Judge Lynn Adelman determined that a pat down search of an arrestee where a female officer felt something near the plaintiff's testicles and then called over a male officer to pull back the waistband of the plaintiff's shorts was "relatively unobtrusive" because the genital and buttocks area was not exposed. *Id.* at 969. Similarly, in *Taylor v. Zens*, Case No. 18-CV-2033, 2022 WL 4121387 (E.D. Wis. Sept. 9, 2022), Magistrate Judge William E. Duffin, comparing both *Campbell* and *Ragland*, determined that a search of an arrestee where an officer pulled down the arrestee's pants while in public was still justified by the need to ensure there was no contraband because his genital area was not exposed to the public.

The arrestees and detainees in the above examples have a greater right to privacy than convicted prisoners. It follows then that if a search that does not expose the genital or buttocks area of an arrestee or detainee is not too intrusive where there is a legitimate threat of contraband being discovered, a similar search of a convicted prisoner would not be too intrusive. Also in the above examples, the searches that were considered reasonable occurred in public in front of both males and females. Thus, in a prison setting a search is reasonable even if conducted in front of other prisoners and female officers as long as there is justification for the search and no exposure of the genital area. Following this logic, then, the first strip search at the officer's station was not unreasonable because Bruce had a legitimate reason to conduct the search (looking for contraband) and Smith's private areas were not exposed.

As for the strip search that occurred in the shower area, Smith argues that the presence of a female guard during the second search made the search unreasonable. It is

well established that "more intrusive cross-sex privacy invasions—'like a strip search in the absence of an emergency'—are materially different. These particularly invasive cross-sex viewings require a reasonable accommodation." *West v. Radtke*, 48 F.4th 836, 851 (7th Cir.2022) (quoting *Canedy v. Boardman*, 16 F.3d 183, 187–88 (7th Cir. 1994)). However, here, Bruce's argument that Smith is introducing new allegations holds water. Smith never alleged in his amended complaint that the second strip search took place in front of a female officer, making it unreasonable. In the amended complaint, Smith sufficiently alleged that the first strip search that occurred at the officer's station could have happened in front of a female officer because Smith alleges that it occurred in front of a Doe officer defendant. (Docket # 24, ¶ 12.) Indeed, this is how Judge Adelman, who had this case prior to the parties' consent to the jurisdiction of this court, construed it when screening the amended complaint—"Plaintiff says he was 'humiliated and embarrass[ed], but he stripped to his underwear in front of over 100 other prisoners and another officer (the Doe officer who he no longer seeks to proceed against)." (Docket # 23 at 3.) True, Smith does not indicate the gender of that officer, but he is permitted to add that detail at summary judgment.

As for the second strip search in the shower, however, there are no allegations in the amended complaint that anyone other than Bruce participated in that strip search. This is not merely adding more detail to a bare bones allegation, but creating a new claim. As such, Smith cannot now bring these allegations at summary judgment and is limited to the scope of the screening order. *See Werner v. Hamblin*, Case No. 12-C-0096, 2013 WL 788076, at *2 (E.D. Wis. March 1, 2013).

Because the first two searches were reasonable, they did not violate Smith's Fourth Amendment rights. Smith's assertions regarding the third search are not permitted because

he attempts to bring a new claim. Thus, Smith cannot demonstrate that the third search was unreasonable. Summary judgment is granted in favor of Bruce on the Fourth Amendment claim.

*2. Eighth Amendment Claim*

Strip searches can also violate the Eighth Amendment where "their purpose is 'maliciously motivated, unrelated to institutional security, and hence totally without penological justification.'" *Chatman v. Gossett*, 766 Fed. App'x 362, 364 (7th Cir. 2019) (quoting *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004)). Where a plaintiff can show that "the strip-search in question was motivated by a desire to harass or humiliate rather than by a legitimate justification, such as the need for order and security," he demonstrates an Eighth Amendment claim. *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015) (partially overruled on other grounds). Even if there is some justification, "the manner in which the searches were conducted must itself pass constitutional muster." *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009). "In short, where there is no legitimate reason for the challenged strip-search or the manner in which it was conducted, the search may 'involve the unnecessary and wanton infliction of pain' in violation of the Eighth Amendment." *King*, 781 F.3d at 897 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).

As discussed above, Smith failed to refute that Bruce had a legitimate reason to conduct the searches. However, Smith also argues that the searches were conducted in a harassing and humiliating manner. He asserts that when he approached the officer's station, Bruce and Royster "were both smirking and grinning at Smith." (Docket # 58, ¶ 5.) Smith also asserts that Bruce's manner of conducting the pat down search was inappropriate. (*Id.*, ¶ 7.) Further, Smith argues that forcing him to strip down to his underwear in front of other

prisoners and officers was done for the purpose of humiliating him. (*Id.*, ¶ 8.) Smith additionally asserts that the invasiveness of the second strip search was inappropriate. (*Id.*, ¶¶ 16–17.)

With regards to the pat down search, Smith does not provide enough evidence to demonstrate that it was done in a harassing manner. As discussed above, pat down searches require the officer to use his hands to thoroughly search a person. Also, the Seventh Circuit has found that "if the defendant had no intention of humiliating the plaintiff or deriving sexual pleasure from fondling his private parts but was merely overzealous in conducting the pat down and strip search, there was no deliberate violation of a constitutional right." *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012). At most, Smith presents evidence that Bruce was smirking at him prior to conducting the pat down search. Generally, "most verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment." *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015). A smirk is not even verbal and such facial expressions, without more context, do not convey intent.

Similarly, Smith does not demonstrate that Bruce had any intent to humiliate or harass him when conducting the second strip search conducted in the shower area. Smith merely asserts that the strip search was thorough. He provides no evidence that Bruce touched him, made demeaning comments, and/or took other actions that would suggest harassment or humiliating intent. *See Mays*, 575 F.3d at 649 (finding the strip search violated the Eighth Amendment because in addition to being thorough the search was conducted in a cold room with guards wearing dirty gloves who also made demeaning comments to the prisoner).

However, there is a question of material fact as to whether Bruce made Smith strip down to his underwear in front of other prisoners and female officers in front of the officers' station. Smith states he did. By contrast, Bruce disputes that he made Smith strip in front of the officer's station, instead stating that he took Smith to the Kenosha East housing unit's shower area. Taking the facts in a light most favorable to Smith, if a reasonable jury credits Smith's testimony that Bruce made him strip down to his underwear in front of the officer's station in full view of other prisoners and female officers, a reasonable jury could conclude that Bruce did so to humiliate and harass Smith. As such, a reasonable jury could conclude that Bruce chose to conduct the search in front of other prisoners and female guards for the purposes of harassment and humiliation in violation of the Eight Amendment.

*3. Qualified Immunity*

Bruce argues that even if the court finds there is a question of material of fact, the court should nevertheless grant summary judgment in his favor because he is entitled to qualified immunity for claims brought under § 1983. To determine whether qualified immunity applies, the court must consider "(1) whether the defendants violated a constitutional right, and (2) whether the constitutional right was clearly established." *Broadfield v. McGrath*, 737 Fed. App'x 773, 775 (7th Cir. 2018).

As discussed above, the court finds that a reasonable jury could conclude that the strip search of Smith conducted at the officer's station violated Smith's Eighth Amendment rights. The only question operating under the law as it existed in March 2022 is whether a reasonable officer would have known that performing a strip search in a harassing or humiliating manner violates the Eighth Amendment. It is well-established that it does. *See Hudson v. Palmer*, 468 U.S. 517, 530 (stating the Eighth amendment protects against

"calculated harassment unrelated to prison needs"); *King*, 781 F.3d at 892; *Mays*, 575 F.3d at 649. Thus, Bruce is not entitled to qualified immunity.

Bruce also argues that even if a claim survives summary judgment, Smith should be limited to recovering only nominal and punitive damages pursuant to 42 U.S.C. § 1997e(e). The court notes that Smith is represented by a lawyer, and also he did not respond to this argument. The current version of § 1997e(e), enacted as part of the Prison Litigation Reform Act, states "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in § 2246 of Title 18)." The Seventh Circuit has held that the statute does not prohibit collection of nominal and punitive damages. *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003).

Smith does not allege in his amended complaint that he suffered from a sexual act, only that the search was "sexual in nature". (Docket #24, ¶ 22.) Smith also acknowledges in his amended complaint that he did not suffer a physical injury, but only "emotional, mental, and psychological pain." (*Id.*) As such, it is clear that he is limited to recovering only nominal and punitive damages.

**CONCLUSION**

For the foregoing reasons, Bruce's motion for summary judgment is granted in part and denied in part. Summary judgment is granted in Bruce's favor on all claims except the Eighth Amendment claim for the strip search conducted outside the officer's station. Bruce is not entitled to qualified immunity. Smith's damages are limited by § 1997e(e) to nominal and punitive damages. The court will set a status conference to discuss next steps at a later date.

**ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Bruce's motion for summary judgment (Docket # 41) is **GRANTED in part and DENIED in part.** Summary judgment is granted in Bruce's favor on all claims except the Eighth Amendment claim for the strip search conducted outside the officer's station.

**IT IS FURTHER ORDERED** that Smith's damages are **LIMITED** by § 1997e(e) to nominal and punitive damages.

Dated at Milwaukee, Wisconsin this 21st day of August, 2026.

BY THE COURT:

Nancy Joseph

NANCY JOSEPH
United States Magistrate Judge